FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

OCT 3 1 2004

REBECCA ZALDO and
CHERRYL SMITH,

Plaintiffs,

CLERK

vs.

No. **CIV 03-1216 MCA/KBM**

MEMORIAL MEDICAL CENTER, INC.,
a New Mexico Corporation,

Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendant Memorial Medical Center's Motion for Summary Judgment/Dismissal* [Doc. No. 26] filed on June 25, 2004, and *Defendant's Motion for Ruling on Defendant's Motion for Summary Judgment* [Doc. No. 41] filed on September 21, 2004. Having reviewed the pleadings of record, the relevant law, and otherwise being fully advised in the premises, the Court grants Defendant's motions for the reasons set forth below. The claims under the Age Discrimination in Employment Act (ADEA) set forth in Count 1 of Plaintiffs' *Complaint* [Doc. No. 1] are dismissed with prejudice, and the state-law claims for breach of contract set forth in Count 2 of Plaintiffs' *Complaint* are dismissed without prejudice.

## I.   BACKGROUND

On October 21, 2003, Plaintiffs filed this civil action seeking damages and an award of attorney fees on the grounds that their employment was terminated in violation of the



ADEA and in breach of their contracts with Defendant. In particular, Plaintiffs allege that they, along with a group of 132 other employees, were placed on "inactive work status" from December 15, 2002, until March 15, 2003, at which time their employment was terminated. [Doc. No. 1, at ¶ 15.] Plaintiffs allege that this workforce reduction was carried out in a manner that unlawfully targeted older workers who are protected by the ADEA.

On June 25, 2004, Defendant moved for summary judgment on the grounds that Plaintiffs' pleading failed to state a cognizable ADEA claim based on disparate impact and that, in any event, Plaintiffs lack the evidence necessary to support any of their ADEA claims. Defendant's motion also seeks the dismissal of Plaintiffs' claims for breach of contract on the grounds that the Court should decline to exercise supplemental jurisdiction over such state-law claims after granting summary judgment on the ADEA claims.

In response to Defendant's motion, Plaintiffs asserted that their ADEA claims are viable but that they needed additional time to gather evidence and complete a statistical analysis in support of these claims. [Doc. No. 31.] To support this request, Plaintiffs submitted affidavits and other materials indicating that the records they sought would be made available beginning on July 28, 2004, and that it would take approximately four to seven days to complete the inspection of these records. [Ex. I, J to Doc No. 32.] To accommodate this inspection and the need for subsequent work by an economist retained by Plaintiffs, the Court extended the deadline for disclosure of Plaintiffs' expert-witness report until August 30, 2004. [Doc. No. 33.]

2

In its reply brief, Defendant indicated a willingness to wait until the deadline for disclosure of Plaintiffs' expert-witness report before seeking a ruling on the motion pending at that time. [Doc. No. 36.]  After Plaintiffs' counsel were permitted to withdraw due to a breakdown in communications with their clients [Doc. No. 40], and no expert report was forthcoming by the deadline set forth in the Court's *Order* [Doc. No. 33], Defendant filed a second motion seeking summary-judgment based on Plaintiffs' failure to come forward with the evidence necessary to support their claims. [Doc. No. 41.]  Plaintiffs have not filed a timely response to this motion.

## II.   ANALYSIS

### A.   Standard of Review

As Defendant sets forth facts and attaches exhibits to its supporting memorandum [Doc. No. 27], the Court reviews Defendant's motion as one for summary judgment under Fed. R. Civ. P. 56 and D.N.M. LR-Civ. 56.1.  Under Fed. R. Civ. P. 56(c), the Court may enter summary judgment when the motion papers, affidavits, and other evidence submitted by the parties show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. A "genuine issue" exists where the evidence before the Court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party as to that issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986).  An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim.  See id. at 248.  Judgment is appropriate "as a matter of

3

law" if the non-moving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir. 1998).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial). See Celotex Corp., 477 U.S. at 324; Wright-Simmons v. City of Okla. City, 155 F.3d 1264, 1268 (10th Cir. 1998). "To survive summary judgment, 'nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.'" Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995) (quoting Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir.1991)). Thus, "[h]earsay testimony cannot be considered" in ruling on a summary-judgment motion. Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995); see also Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1555 (10th Cir. 1995) (applying this rule to inadmissible hearsay testimony in depositions); Lozano v. Ashcroft, 258 F.3d 1160, 1166 (10th Cir. 2001) (refusing to consider declaration that was based on hearsay rather than personal knowledge and did not attach copies of records referenced therein).

Apart from these limitations imposed by the Federal Rules of Evidence, it is not the Court's role to weigh the evidence, assess the credibility of witnesses, or make factual

4

findings in ruling on a motion for summary judgment. Rather, the Court assumes the admissible evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all admissible evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

**B.      Plaintiffs' ADEA Claims**

Plaintiffs allege two theories of age discrimination in this case: disparate impact and disparate treatment. Defendant contends that a disparate-impact theory is not legally cognizable under the ADEA in light of Ellis v. United Airlines, 73 F.3d 999, 1099 (10th Cir. 1996). Plaintiffs respond that Ellis is factually distinguishable because it involved a refusal to hire rather than the termination of employment based on a workforce reduction.

The Court is not persuaded that Ellis is limited to refusal-to-hire cases or that it has been displaced to any significant degree by the weight of authority in other circuits. On the contrary, the Court concludes that the rationale stated in Ellis is applicable to the facts alleged here and accords with the reasoning of the majority of other circuits that have ruled on this issue. See generally Zachary L. Karmen, Annotation, Disparate Impact Claims Under Age Discrimination Act of 1967, 186 A.L.R. Fed. 1 (2003) (noting that the First, Third, Sixth, Seventh, Tenth, and Eleventh Circuits do not allow disparate impact claims under the ADEA and that only the Second, Eighth, and Ninth Circuits allow such claims); see, e.g., Adams v. Florida Power Corp., 255 F.3d 1322 (11th Cir. 2001) (concluding that

5

a disparate-impact theory was not available to a group of plaintiffs who brought suit under the ADEA after their employment was terminated as a result of corporate downsizing). Recently, the Fifth Circuit joined the majority of other circuits in ruling that a disparate-impact theory is not viable under the ADEA; this ruling is currently under review by the Supreme Court. See Smith v. City of Jackson, 351 F.3d 183 (5th Cir. 2003), cert. granted, 124 S. Ct. 1724 (2004).

Even if the Supreme Court were to overrule the authorities cited above and hold that a disparate-impact theory is available under the ADEA, Defendant would still be entitled to summary judgment in this case because Plaintiffs have failed to come forward with the statistical evidence necessary to establish a *prima facie* case or to show pretext under this theory. "Statistical data may be admitted to show a disparity in outcome between groups, but to make out a prima facie case the statistical disparity must be sufficiently substantial to raise an inference of causation." Smith v. Xerox Corp., 196 F.3d 358, 365 (2d Cir. 1999). In other words, the statistical evidence must be "'of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." Id. (quoting Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 994 (1988)).   Typically a statistical disparity is considered sufficiently substantial if the actual result obtained by the statistical analysis deviates from the expected result by two standard deviations, or if the selection rate for the protected group in question (*i.e.*, employees who are forty or more years old) is less than eighty percent of

6

the rate for the group with the highest selection rate. See id. at 365-66. In order to determine whether these criteria are met, it is necessary to identify "the composition of the population subject to the reduction-in-force," as well as "the retention rate of the protected group compared to the retention rate of other employees." Id. at 368 (citing Ramona L. Paetzold & Steven L. Willborn, *The Statistics of Discrimination* § 1.09, at 28-29 (1998)).

In this case, Plaintiffs have presented affidavits in which they each opine that: "Due to my familiarity with the staff at Memorial Medical Center after so many years of working for the hospital, I was able to review the list of positions [that were terminated in the reduction-in-force] and determine who worked in almost each of those positions." [Zaldo Aff. ¶ 6; Smith Aff. ¶ 6.] Plaintiffs further opined in their affidavits that: "After determining who was fired in the reduction in force, I concluded that more than fifty percent of those terminated were over the age of forty" and that "I was also able to estimate that approximately one-fourth of those terminated held patient care positions such as ultrasound technicians and nurses." [Zaldo Aff. ¶ 7; Smith Aff. ¶ 7.]

These affidavits do not support a reasonable inference of a sufficiently substantial disparity in selection or retention rates between employees who are forty or more years of age and other employees at the time of Defendant's workforce reduction. Indeed, it is questionable whether the quoted portions of the affidavits may even be considered in ruling on Defendant's summary-judgment motion because of their conclusory nature and their failure to attach copies of the records referenced therein as required by Fed. R. Civ. P. 56(e).

See Lozano v. Ashcroft, 258 F.3d 1160, 1166 (10th Cir. 2001) (refusing to consider declaration that did not attach copies of records referenced therein).

To the extent that they do merit consideration under Fed. R. Civ. P. 56(e), the affidavits do not create a genuine issue of material fact because they do not contain the information necessary to support a methodologically sound statistical comparison between the population of employees subjected to the workforce reduction and the employee population as a whole. For example, there is no indication of what percentage of the employee population as a whole is forty or more years of age or is devoted to patient-care positions. Thus, the affidavits provide no valid basis for comparison between the two populations.

Plaintiffs state elsewhere in their response to Defendant's summary-judgment motion that the information they were previously provided (and upon which they presumably relied in their affidavits) was "not complete" and that collection of additional data was "necessary" in order to perform an "analysis by their expert economist." [Doc. No. 32, at ¶¶ 2-6.] In accordance with Fed. R. Civ. P. 56(f), the Court deferred ruling on Defendant's motion while Plaintiffs were afforded more time to collect this additional information and complete their statistical analysis. [Doc. No. 33.] Now the deadline for completing the additional discovery and providing Plaintiffs' expert-witness report has long since passed. Plaintiffs still have not come forward with any additional evidence to support a disparate-impact claim, nor have they provided any reason why they are entitled to more time to present this evidence. It

8

follows that Defendant is entitled to summary judgment on Plaintiffs' disparate-impact claim under the ADEA.

The Court reaches the same conclusion with respect to Plaintiffs' disparate-treatment claim under the ADEA. With respect to this claim, Defendant has presented a facially nondiscriminatory rationale for including Plaintiffs in the workforce reduction, namely the financial crisis occasioned by the opening of another hospital in the region, and the need to retain those employees most closely connected with patient care. Thus, to defeat summary judgment on this claim, Plaintiffs must present direct evidence of Defendant's discriminatory intent, or they must establish both a *prima facie* case and pretext through circumstantial evidence under the burden-shifting framework set forth in <u>McDonnell-Douglas v. Green</u>, 411 U.S. 792, 802-05 (1973). <u>See</u> <u>Ellis</u>, 73 F.3d at 1004.

Plaintiffs readily admit that they did not find, nor did they expect to find, direct evidence of discriminatory intent in the depositions or other statements of the management personnel responsible for planning and carrying out the workforce reduction. [Doc. No. 32, at 10.] Rather, Plaintiffs state that: "Circumstantial evidence of that intent will be found in the statistical analysis of those employed at the hospital at the time of the reduction in force and those effected by the reduction in force." [Doc. No. 32, at 11.] Plaintiffs have been afforded an additional opportunity to provide such a statistical analysis but have not availed themselves of that opportunity. Further, the conclusory statements contained in Plaintiffs' affidavits do not provide the information necessary to raise a reasonable inference of

9

discriminatory intent for the reasons previously stated. See Smith, 196 F.3d at 370-71. Accordingly, Defendant is entitled to summary judgment on Plaintiffs' disparate-treatment claim under the ADEA.

C.    **Plaintiffs' Breach-of-Contract Claims**

Diversity of citizenship is lacking in this case, and Plaintiffs' claims for breach of contract arise under state law. Accordingly, these claims are before this Court only by virtue of the supplemental jurisdiction conferred by 28 U.S.C. § 1367(a).

"The district courts may decline to exercise supplemental jurisdiction over a claim under [28 U.S.C. § 1367](a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Having granted summary judgment on all of Plaintiff's claims arising under federal law, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims. See 28 U.S.C. § 1367(c)(3); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).

In so declining, the Court has considered whether the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction. See Anglemyer v. Hamilton County Hosp., 58 F.3d 533, 541 (10th Cir. 1995). The Court is not convinced that these factors weigh in favor of retaining jurisdiction. In this regard, the Court notes that Plaintiffs' breach of contract claims may involve "a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). Notions of comity and federalism demand that a state court try such claims in the first instance, absent compelling reasons to

the contrary.  See Thatcher Enters. v. Cache County Corp., 902 F.2d 1472, 1478 (10th Cir.

1990).  In addition, the Court's decision not to exercise supplemental jurisdiction is not

necessarily fatal to Plaintiff's state-law claims, as 28 U.S.C. § 1367(d) provides for the

tolling of any limitations period regarding these claims.

## III.   CONCLUSION

For the foregoing reasons, Defendant's motions are granted.  The ADEA claims set

forth in Count 1 of Plaintiffs' *Complaint* [Doc. No. 1] are dismissed with prejudice, and the

state-law claims for breach of contract set forth in Count 2 of Plaintiffs' *Complaint* are

dismissed without prejudice.

**IT IS, THEREFORE, ORDERED** that *Defendant Memorial Medical Center's*

*Motion for Summary Judgment/Dismissal* [Doc. No. 26], and *Defendant's Motion for*

*Ruling on Defendant's Motion for Summary Judgment* [Doc. No. 41] are **GRANTED**.

**IT IS FURTHER ORDERED** that the ADEA claims asserted in Count 1 of

Plaintiffs' *Complaint* are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the state-law claims for breach of contract

asserted in Count 2 of Plaintiffs' *Complaint* are **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED**, this 31st day of October, 2004, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge

11